UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BORN TO ROCK DESIGN INCORPORATED

                Plaintiff,

    v.

CAFEPRESS.COM, INC.,

                Defendant.

Case No.  10-CV-8588 CM (JCF)

ECF CASE

**ORAL ARGUMENT REQUESTED**

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Jill M. Pietrini, Esq. (admitted *pro hac vice*)
Anthony Staltari, Esq.
Shannon S. King, Esq. (admitted *pro hac vice*)
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square, 23rd Floor
New York, NY 10036
Telephone:  (212) 790-4500
Facsimile:  (212) 790-4545

*Attorneys for Defendant*
CAFEPRESS INC.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................... 1

II.     SUMMARY OF UNCONTROVERTED FACTS ........................................... 1

        A.      CafePress And Its Business ................................................ 1

        B.      BTR's Allegations Against CafePress ....................................... 2

        C.      Background of BTR's Federal Registrations ................................ 6

III.    CAFEPRESS' MOTION FOR SUMMARY JUDGMENT SHOULD BE
        GRANTED ......................................................................... 8

        A.      Standards Governing Motions For Summary Judgment ........................ 8

        B.      All Claims Must Be Dismissed Because BTR Cannot Prove Trademark
                Use by CafePress or the Content Owners ................................... 9

        C.      BTR Cannot Demonstrate "Counterfeiting" or "a Spurious Designation
                that is Identical With, or Substantially Indistinguishable From," the BTR
                Marks .................................................................... 14

        D.      BTR's Claims Should be Dismissed With Prejudice Because CafePress'
                Search Function  and the Content Owners' Designs Constitute Permissible
                Fair Use ................................................................. 19

IV.     CONCLUSION ..................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*1-800 Contacts, Inc,. v. Whenu.comn, Inc.,*
    414 F.3d 400 (2nd Cir. 2005)......................................................................7, 9, 11

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986).......................................................................................8, 9

*Bell v. Harley Davidson Motor, Co.,*
    539 F. Supp.2d 1249 (S.D.Cal. 2008)..............................................................21

*Bhiari v. Gross,*
    119 F. Supp.2d 309 (S.D.N.Y. 2000)................................................................19

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).......................................................................................8, 9

*Colgate-Palmolive Company v. J.M.D. All-Star Import and Export, Inc.,*
    486 F. Supp.2d 286 (S.D.N.Y. 2007)...................................................8, 10, 15, 16

*Damn I'm Good Inc. v. Sakowitz, Inc.,*
    514 F. Supp. 1357 (S.D.N.Y. 1981)..................................................................13

*ETW Corp. v. Jireh Publ., Inc.,*
    332 F.3d 915 (6th Cir. 2003) ..........................................................................19

*Fifty-Six Hope Road Music Ltd. v. A.V.E.L.A, Inc.,*
    688 F. Supp.2d 1148 (D. Nev. 2010)................................................................11

*GMA Accessories, Inc. v. BOP, LLC,*
    765 F. Supp.2d 457 (S.D.N.Y. 2011).............................................................14, 15

*Gruner & Jahr USA Pub. v. Meredity Corp.,*
    991 F.2d 1072 (2nd Cir. 1993)..........................................................................7

*Grupke v. Linda Lori Sportswear, Inc.,*
    921 F. Supp. 987 (E.D.N.Y. 1996) ..................................................................12

*Hensley Manufacturing v. Propride, Incorporated,*
    579 F.3d 603, 612 (6th Cir. 2009) ..................................................................19

*In re Astro-Gods Inc.,*
    223 U.S.P.Q. 621 (TTAB 1984) ......................................................................13

*In re Dimitri's, Inc.,*
    9 U.S.P.Q.2d 1666 (TTAB 1988) ....................................................................13

*Interactive Prods. Corp. v. a2Z Mobile Office Solutions, Inc.,*
    326 F.3d 687 (6th Cir. 2003) ...................................................................9, 12, 13

*Johnson v. Connolly,*
    2007 WL 1151004 (N.D.Cal. 2007) .................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page

*Jurin v. Google, Inc.*,
   695 F. Supp.2d 1117 (E.D. Cal. 2010)......................................................................11

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111, 125 S.Ct. 542 (2004)............................................................7, 19, 20, 22

*Leathersmith of London, Ltd. vs. Alleyn*,
   695 F.2d 27, 31 (1st Cir. 1982)..............................................................................19

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   194 F.3d 980 (9th Cir. 1999) ................................................................................11

*Montres Rolex, S.A. v. Snyder*,
   718 F.2d 524 (2nd Cir. 1983)................................................................................15

*Packman v. Chicago Tribune Co.*
   267 F.3d 628 (7th Cir. 2001)................................................................................21

*Pure Foods v. Minute Maid Corp.*,
   214 F.2d 792 (5th Cir. 1954) ...................................................................................9

*S & L Vitamins, Inc. v. Australian Gold, Inc.*,
   521 F. Supp.2d 188 (E.D.N.Y. 2007) ..........................................................7, 9, 10, 11

*Schneider Saddlery Co. v. Best Shot Pet Prods. Intern., LLC*,
   2009 WL 964072 (N.D. Ohio 2009) .......................................................................15

*Specht v. Google, Inc.*,
   660 F. Supp.2d 858 (N.D. Ill. 2009) ......................................................................15

*Tyco Healthcare Croup, LP v. Kimberly-Clark Corp.*,
   463 F. Supp.2d 127 (D. Mass. 2006) ......................................................................19

*Weinstock v. Columbia University*,
   224 F.3d 33 (2nd Cir. 2000)....................................................................................9

**STATUTES**

15 U.S.C. § 1114.....................................................................................................7

15 U.S.C. § 1114(1)(a)( .............................................................................................9

15 U.S.C. § 1115(a) ..................................................................................................6

15 U.S.C. § 1115(b)(4) ..........................................................................................5, 19

15 U.S.C. § 1116(d) ................................................................................................14

15 U.S.C. § 1116(d)(1)(B) ..........................................................................................8

15 U.S.C. § 1125(a) ..................................................................................................7

§ 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a)..........................................................10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**OTHER AUTHORITIES**

Inc. "CafePress" ...................................................................................................................1

J. Thomas McCarthy, *Trademarks and Unfair Competition* § 7:24 (4th ed.) ........................12, 14

**RULES**

FRCP 56.....................................................................................................................................8

## I.     INTRODUCTION

Plaintiff Born to Rock Design Incorporated ("BTR" or "Plaintiff") filed suit against Defendant CafePress Inc., (formerly known as CafePress.com, Inc. "CafePress") asserting claims for trademark infringement and unfair competition (Count I), trademark counterfeiting (Count II), and false designation of origin (Count III), all under the Lanham Act.  CafePress answered the Complaint, denying all claims and asserting several affirmative defenses, including fair use. There is no need for a trial in this case, and all claims can be decided on summary judgment.

There are no material facts in dispute on one key element of all of Plaintiff's claims, namely, that CafePress and its Content Owners (defined below) do not use the phrase "born to rock" and variations thereof as trademarks.  As such, all of Plaintiff's claims fail and summary judgment should be granted on all counts of the Complaint.

Even if Plaintiff could establish that CafePress and the Content Owners somehow use these commonplace phrases as trademarks, Plaintiff's counterfeiting claim still fails because the undisputed facts clearly show that the Content Owners' designs at issue are not *identical to, or substantially indistinguishable from,* BTR's trademark either directly or as used by BTR. Indeed, as shown below, the Content Owners use entirely different representations of the common and colloquial phrase "born to rock", which BTR claims it exclusively owns for use on guitars and any kind of merchandise.  Accordingly, at a minimum, summary adjudication should be granted in CafePress' favor on BTR's claim for counterfeiting as stated in Count II.

Finally, assuming that Plaintiff could overcome the hurdles of proving use in commerce by CafePress and the Content Owners and that the Content Owners' designs are counterfeit within the meaning of the statute, Plaintiff's claims are nonetheless barred by CafePress' and the Content Owners' fair use of the colloquial phrase "born to rock" and variations thereof as search terms and as part of decorative designs on merchandise, respectively.

## II.    SUMMARY OF UNCONTROVERTED FACTS

### A.    CafePress And Its Business

CafePress is currently a privately owned company based in San Mateo, California.  It is

an internet service provider offering an automated service that allows its users, individuals, organizations, and businesses ("Content Owners" or "Users") to create content and, to set up virtual online shops and to feature and offer for sale their products in a virtual online marketplace.  (Fact 1).  The shops created by its Users and the virtual online marketplace are hosted by CafePress.  (Fact 1).  CafePress provides the venue and capabilities for these Users to create, buy and sell customized merchandise online using the company's unique print-on-demand and e-commerce services.  (Fact 2.)  Currently, CafePress has more than 7 million Users who have created content for use on more than 300 million customized products, including apparel, yard signs, stickers, buttons, bags, prints, posters, cards, and home and office accessories.  (Fact 3).

Since as early as September 2003, Content Owners have used CafePress' services to offer for sale T-shirts and other products bearing the phrases  "born to rock", "born to rock forced to work", "born to be a rock star" and variations thereof in connection with other design elements, such as the image of a baby and a star.  (Fact 4).  The Content Owners' uses of these terms generally appeared on the CafePress website as ornamental and descriptive designs on products. (Fact 4).

**B.**　　**BTR's Allegations Against CafePress**

On May 19, 2009, BTR sent a letter to CafePress demanding that it remove User content containing the phrase "born to rock", relying upon its trademark registration for that term for guitars in Class 15.  (Fact 5).  BTR's notice did not include specific links to the content it found objectionable on the CafePress website.  (Fact 5).  On May 26, 2009, CafePress emailed BTR requesting specific links to the content at issue.  (Fact 6).  BTR responded to CafePress via an email that contained the links it was objecting to on June 23, 2009.  (Fact 7).  On June 25, 2009, CafePress formally responded to BTR's cease and desist notices.  (Fact 8).  In that response, CafePress informed BTR that it would not accede to its demands to remove content because the goods were non-competing (BTR did not have a trademark registration or application for

2

clothing in Class 25 at that time); the designs were merely ornamental; and the doctrine of fair use allows for descriptive use of common terms and phrases.  (Facts 8, 14).  The parties exchanged further communications regarding the dispute.  (Fact 9).  Finally, on September 8, 2009, CafePress emailed BTR informing it that CafePress was unwilling to change its stance at that time.  (Fact 9).

CafePress did not hear from BTR again until more than a year later on September 13, 2010, when CafePress received an email from BTR reiterating its demands and including its new trademark registration for apparel in Class 25.  (Fact 10).  Again, this new cease and desist notice did not provide specific links to the content on the CafePress website that BTR found objectionable.  (Fact 10).  CafePress replied on September 17, 2010.  (Fact 11).  In its response to BTR's September 13, 2010 email, CafePress informed BTR that CafePress removed some content from products on the websites.  (Fact 11).  Because BTR did not provide specific links to the content it found objectionable in its September 13, 2010 correspondence, CafePress' removal of content was based on the specific links BTR provided in its June 23, 2009 email.  (Fact 11).  CafePress also noted that it would not remove some of the other content, such as "born to be a rock star", for the reasons set forth in its June 25, 2009 email.  (Fact 11).  Finally, CafePress requested that BTR provide specific links to any other content it found objectionable on CafePress' website, but that it did not list in its June 25, 2009 email, so that CafePress could fully address BTR's concerns.  (Fact 11).  CafePress heard nothing further until BTR served the Complaint on CafePress on November 17, 2010.  (Fact 11).

The Complaint alleges three counts against CafePress for:  (1) trademark infringement and unfair competition under the Lanham Act; (2) counterfeiting under the Lanham Act; and (3) federal and false designation of origin, false descriptions and representations under the Lanham Act.  BTR claims that the appearance of the phrases  "born to rock," "born to be rock star," "born to rock forced to work," "born to rock, ready to roll," "born to ride, born to rock," and other variations in the Content Owners' designs infringes its BORN TO ROCK trademark

3

(U.S. Reg. Nos. 1,846,682 and 3,843,978).  BTR goes so far as to allege that a Content Owner's design containing "born to rock" with a star constitutes counterfeiting -- even though it is clearly an ornamental design that differs in font, color and design from BTR's use of the BTR Marks, and is not remotely identical or a colorable imitation of the BORN TO ROCK trademark claimed by BTR.  The Content Owners' designs challenged by Plaintiff that contain the phrase "born to rock" and variations thereof are shown below:





(Fact 12).

On January 18, 2011, CafePress filed its Answer in which CafePress sets forth various affirmative defenses, including non-trademark use, fair and descriptive use under 15 U.S.C. § 1115(b)(4), and ornamental use. Specifically, Content Owners' uses of the phrases "born to

rock," "born to be rock star," "born to rock forced to work," "born to rock, ready to roll," "born to ride, born to rock" are ornamental, non-trademark uses and also constitute fair, descriptive uses because, among other things, they describe a state of being or feeling inherently associated with the phrases.  Further, Plaintiff has limited rights, if any, in and to the phrase "born to rock" given the hundreds, if not thousands, of instances of third party uses of the phrase and variations thereof in connection with apparel and music-related goods and services.

### C.    Background of BTR's Federal Registrations

BTR filed federal trademark applications that eventually matured into registrations issued by the U.S. Patent & Trademark Office ("PTO") for BORN TO ROCK, Reg. No. 1,846,682 in Class 15 for "electric guitars" (the "682 Mark") and Reg. No. 3,843,978 in Class 25 for "T-shirts"[1] (the "978 Mark").  (Fact 13).  BTR uses the 682 Mark and the 978 Mark in conjunction with the following unregistered design mark (the "Unregistered BTR Logo") (Fact 14).:



The 682 Mark, the 978 Mark and the Unregistered BTR Logo are collectively referred to as "the BTR Marks."

Federal trademark registrations afford the owner several evidentiary presumptions regarding the trademarks and the owner's rights in those trademarks, including that the trademark is valid, and that the owner has the "exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration . . . "  15 U.S.C. § 1115(a).  These presumptions may be rebutted, when the registration is not incontestable, such as the Class 25 registration obtained by Plaintiff.  The registration only

---

[1]     It should be noted that, at the time of BTR's May 2009 correspondence with CafePress, BTR did not have a Class 25 application or registration on file with the PTO for the descriptive phrase "born to rock."

relieves plaintiff of the burden of demonstrating that its trademark is valid, which would include proving that the trademark is inherently distinctive or has acquired secondary meaning. However, the descriptiveness of a mark or a term, even if registered, is always considered under a fair use analysis, *see Leathersmith of London, Ltd. v. Alleyn*, 695 F.2d 27, 30-31 (1st Cir. 1983), or in the conceptual strength of the alleged mark. *Gruner & Jahr USA Pub. v. Meredity Corp.*, 991 F.2d 1072, 1078 (2nd Cir. 1993).

In the present case, BTR has relied upon its trademark registrations in filing its Complaint. BTR seeks exclusive rights in a common, well-known descriptive phrase. It is well-established that a trademark holder's right to exclude third parties' use of a trademarked term is limited when the trademark holder elects to identify itself with a common, descriptive term. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 112-13, 125 S.Ct. 542 (2004). Such is the case here. However, before Plaintiff can prevail on any of its claims, it must prove that CafePress and the Content Owners are in fact using the common and colloquial phrase "born to rock" and variations thereof as a trademark. *See*, *1-800 Contacts, Inc,. v. Whenu.comn, Inc.*, 414 F.3d 400, 406-407 (2nd Cir. 2005). To prevail on a trademark infringement claim for registered trademarks under 15 U.S.C. § 1114, or for unregistered trademarks under 15 U.S.C. § 1125(a), a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act, (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, and (5) without the plaintiff's consent. *Id.* at 407; *Accord*, *S & L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp.2d 188, 199 (E.D.N.Y. 2007) ("Although the parties jump to arguments concerning confusion and first sale doctrine, the Court must first determine whether there exists trademark 'use' under the Lanham Act. Indeed, if S&L has not 'used' the Marks, there is no violation under the Lanham Act, regardless of the theory").

BTR also claims that various uses of this phrase by third parties, including the Content Owners, and by CafePress constitutes counterfeiting. However, counterfeiting is reserved for a special type of infringement in which the allegedly counterfeit products are identical to, or

substantially indistinguishable from, the trademark holder's products. *See, e.g., Colgate-Palmolive Company v. J.M.D. All-Star Import and Export, Inc.*, 486 F. Supp.2d 286, 289 (S.D.N.Y. 2007) (finding that defendant's "colddate" toothpaste packaging was not substantially identical to plaintiff's "colgate" toothpaste packaging, and therefore no counterfeiting). The facts are undisputed in this regard. The Court can merely look at the challenged Content Owners' designs and compare them to how Plaintiff uses its BTR Marks and find as a matter of law that the Content Owners' designs do not meet this heightened threshold.

Finally, all of BTR's claims fail because the Lanham Act was not intended to prevent descriptive uses of a descriptive term, such as the phrase "born to rock, forced to work" and others used by the Content Owners.

## III. CAFEPRESS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED

Based on the undisputed facts regarding the BTR Marks and the Content Owners' designs, summary judgment is appropriate on all claims alleged by Plaintiff in this case. Even if Plaintiff can overcome the hurdle that the Content Owners and CafePress are using the challenged phrases as trademarks, Plaintiff still cannot meet its burden to prove that the Content Owners' designs are identical to, or substantially indistinguishable from, the BTR Marks. Therefore, at a minimum, summary adjudication of BTR's Count II for trademark counterfeiting under 15 U.S.C. § 1116(d)(1)(B) should be dismissed with prejudice. Assuming the first two hurdles are overcome by Plaintiff (they cannot), Plaintiff's claims are barred by the fair use doctrine. There are no factual disputes as to how the descriptive phrases appear on the CafePress website or how they appear in the Content Owners' designs, and summary judgment is therefore appropriate as to all claims under the fair use doctrine.

### A. Standards Governing Motions For Summary Judgment

Under FRCP 56, a moving party is entitled to summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 317-18, (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-48 (1986).  "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2nd Cir. 2000) (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505).

As a movant, CafePress must demonstrate that there is no triable issue as to the elements of Plaintiff's claims, namely that CafePress and the Content Owners are not using the phrase "born to rock" and variations thereof as trademarks and that BTR cannot show that the Content Owners' designs are identical to, or substantially indistinguishable from, the BTR Marks. *Anderson*, 477 U.S. at 247-48.  A summary judgment motion may be made in reliance solely on the pleadings, depositions, answers to interrogatories and admissions.  *Celotex*, 477 U.S. at 324-25.  CafePress makes that showing, as illustrated below, based on Plaintiff's discovery responses, its pleadings, the nature of the CafePress website, and viewing the designs at issue.

**B.    All Claims Must Be Dismissed Because BTR Cannot Prove Trademark Use by CafePress or the Content Owners**

A prefatory element to each of Plaintiff's claims is that CafePress and the Content Owners are using the phrase "born to rock" as a trademark.  *See* 15 U.S.C. § 1114(1)(a)("(1) Any person who shall, without consent of the registrant – (a) *use in commerce . . .*") (emphasis added); *1-800 Contacts*, 444 F.3d at 406-407; *see also*, *Interactive Prods. Corp. v. a2Z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003) ("[i]n this case, there is a preliminary question about whether defendants are using the challenged mark in a way that identifies the source of their goods.").   If there is no trademark use, there can be no trademark infringement, counterfeiting, or false designation of origin.  *S&L Vitamins*, 521 F. Supp.2d at 199; *Pure Foods v. Minute Maid Corp.*, 214 F.2d 792, 795 (5th Cir. 1954) ("To be guilty of infringement of a registered mark under this statute the defendant must use the infringing mark "in commerce."

Although another prerequisite to finding for Plaintiff on all of its claims is the existence

of a valid trademark,[2] CafePress is not contesting validity in this motion.  Even assuming BTR owns valid trademarks, BTR cannot prove any of its claims because neither CafePress nor its Content Owners or Users have made "trademark use" of the phrase "born to rock".  Rather, the Content Owners have placed ornamental colloquial phrases on merchandise and have offered those products for sale through the CafePress website.  The Content Owners have not used the phrase "born to rock" or variations thereof as brands in any respect.  CafePress did not even create the content to which Plaintiff objects; rather the nature of CafePress' activities that Plaintiff complains about is the search function on the CafePress website and the fact that the Content Owners' designs are offered on the CafePress website.  As for the search function, Plaintiff contends that by a User typing in a phrase such as "born to rock" or "born to rock not to work" in the search function on the CafePress website, the resulting hit page which identifies various designs to be applied to merchandise (most of which do not even bear the phrase "born to rock")[3] is somehow a trademark use of Plaintiff's alleged BTR Marks.  Plaintiff is mistaken on all fronts.

> **1.    CafePress Does Not "Use" the BTR Marks on its Website or in its Search Engine**

Use of a trademark in the search engine context does not constitute "trademark use" under the Lanham Act.  *S&L Vitamins, Inc.*, 521 F. Supp.2d at 200 (Finding no actionable "use" under the Lanham Act where defendants used trademarks in metatags, purchased the trademarks

---

[2]    Having a valid registered trademark is a prerequisite for a counterfeiting claim.  *See Colgate-Palmolive*, 486 F. Supp.2d at 288-89 ("Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), allows the owner of a <u>registered trademark</u> to recover against defendants who "use in commerce any reproduction, counterfeit … A defendant who uses a counterfeit of a <u>registered mark</u>, as opposed to a mere colorable imitation, is subject to increased civil damages as well as criminal penalties").  CafePress believes that there are serious questions as to the validity of BTR's 978 Mark, but has foregone such an argument for the purposes of this motion only because, regardless of validity, BTR cannot demonstrate that the Content Owners' content constitutes "trademark use" or "counterfeiting."

[3]    The designs that Plaintiff contends infringe its BTR Marks simply on the basis that there are identified in search results for "born to rock" on the CafePress website and do not include that phrase are shown in Fact 16.

as keywords, or in the search engine context); *see also Fifty-Six Hope Road Music Ltd. v. A.V.E.L.A, Inc.*, 688 F. Supp.2d 1148, 1160 (D. Nev. 2010) (holding the appearance of the name "Bob Marley" on the defendants' and retailers' websites was not trademark "use"). Additionally, use of keywords to trigger results that correlate to a user's search query does not constitute "use" under the Lanham Act. *See Jurin v. Google, Inc.*, 695 F. Supp.2d 1117, 1121-22 (E.D. Cal. 2010) (Google not liable for false designation of origin for its Adwords program, as it had not represented that it was the producer of the mark at issue); *1-800 Contacts*, 414 F.3d at 403, 410 (finding no trademark use where the defendant used the plaintiff's website address to trigger pop-up ads; defendant did not disclose or sell keywords and the pop-up ads did not include the plaintiff's mark).

CafePress' website does not "use" the phrases "born to rock", "born to be a rockstar", "born to rock, ready to roll" or other variations of those terms as trademarks.  As with search engines such as Yahoo and Google, CafePress' search function allows users to browse for third party content by entering a specific search term.  Upon receiving a search query from a user, CafePress' website merely indexes the products viewable in the general search results based on the keywords entered by Users.  S*ee 1-800 Contacts*, 414 F.3d at 412; *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984-85 (9th Cir. 1999) (finding NSI not liable for contributory trademark infringement because NSI did not supply domain name combinations "any more than the Postal Service supplies a street address by performing the routine service of routing mail.").  Further, CafePress does not represent that it is the producer of the content viewable in its search results.  *See, e.g., Jurin*, 695 F. Supp.2d at 1121-22.

Further, the appearance of the phrase "born to rock" in various fields on the website does not constitute "use in commerce."  *S&L Vitamins,* 521 F. Supp.2d at 200.  CafePress does not actively include the phrases born to rock", "born to be a rockstar", "born to rock, ready to roll", or other variations on its website.  Instead, those terms appear in the URL, the top of the search results page, and various other fields merely because a User searched that specific term on the

CafePress website.  This is the case with any terms searched on the CafePress site and is a common feature of all internet sites with a search engine.  *See Interactive Prods. Corp.*, 326 F.3d at 696-97 (the appearance of "laptraveler" in the post domain portion of the URL was not "use in commerce;" it "merely shows how the website's data is organized within the host computer's files.")  The same is true here.  CafePress' motion should be granted because CafePress' search function does not use "born to rock", "born to be a rockstar", "born to rock, ready to roll" or other variations as trademarks.  Without such use, there can be no trademark infringement, counterfeiting, or false designation of origin as a matter of law.  There are no factual disputes on how the challenged phrases appear on the CafePress website, and therefore, summary judgment can and should be granted in CafePress' favor.

### 2.    The Content Owners Do Not "Use" the Phrase "born to rock" on Merchandise

BTR's allegations that the User content containing the phrases "born to rock", "born to rock, ready to roll", "born to be a rockstar" and variations thereof, are uses of the BTR Marks are untenable.  There are no facts in dispute as to how the Content Owners use the challenged phrases – they appear only on the front of the merchandise as decoration to an otherwise blank product.  The Content Owners do not manufacture the products – rather, they select the blank pre-made products that Users can select for purchase and apply the Content Owners' designs.  It is well settled that subject matter that merely serves a decorative function does not identify and distinguish goods and, therefore, does not function as a trademark.  1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 7:24 (4th ed.); *Grupke v. Linda Lori Sportswear, Inc.*, 921 F. Supp. 987, 996 (E.D.N.Y. 1996) (Because the design was "primarily aesthetic," the plaintiffs failed to prove secondary meaning in their "Cats Coming and Going" phrase and the plaintiffs submitted no evidence that they intended their design to identify the source of the tee-shirts, the court granted the defendants' motion for summary judgment as to plaintiffs' trademark and trade dress claims.").  It is also a matter of common knowledge that T-shirts are "ornamented" with

various decorations, and if such ornamentation is without any meaning other than as mere decoration, then the ornamentation could not, and would not, serve as indicia of source. *See In re Astro-Gods Inc.*, 223 U.S.P.Q. 621, 623 (TTAB 1984); *In re Dimitri's, Inc.*, 9 U.S.P.Q.2d 1666, 1668 (TTAB 1988) (SUMO on T-shirts and baseball caps is not registrable because it is part of aesthetic ornamentation and is not also used in a trademark sense); *see also Damn I'm Good Inc. v. Sakowitz, Inc.*, 514 F. Supp. 1357, 1361 (S.D.N.Y. 1981) (DAMN I'M GOOD, inscribed in large letters on bracelets and used on hang tags affixed to the goods, found to be without source-indicating significance).

The Content Owners' inclusion of the phrases "born to rock", "born to rock, ready to roll", "born to be a rockstar" and variations thereof on their goods are purely for ornamental purposes and do not identify the source of their respective products. The use of these phrases is clearly not as brands – it is ornamentation. The products in dispute consist of t-shirts and other items with large, centrally-placed designs containing the challenged phrases in conjunction with other words and/or design elements to indicate a love of rock and roll, of stardom, a feeling associated with listening to certain type of music, of sitting in a rocking chair, or a state of being. And as mentioned, the Content Owners and CafePress do not sell pre-made products with the designs at issue. Instead, CafePress offers blank products that the Users decorate with the selected Content Owners' designs.

Since the designs do not serve a source identifying function, they cannot be the basis for a counterfeiting, trademark infringement, or false designation of origin claim. *Interactive Products Corp.*, 326 F.3d at 695 ("If defendants are only using [plaintiff's] trademark in a 'non-trademark' way - that is, in a way that does not identify the source of a product - then trademark infringement and false designation of origin laws do not apply."). Simply put, as a matter of law `there is no "trademark use" of the BTR Marks by the Content Owners, and consequently, BTR's claims must fail.

**C.     BTR Cannot Demonstrate "Counterfeiting" or "a Spurious Designation that is Identical With, or Substantially Indistinguishable From," the BTR Marks**

Even if Plaintiff could prove that the Content Owners' use of the colloquial phrase "born to rock" and variations thereof were trademark use (it cannot), Plaintiff's counterfeiting still necessarily fails because Plaintiff cannot meet the requirements of a counterfeit mark under the Lanham Act.  The Lanham Act defines a "counterfeit mark" as:

> (i)     a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or

> (ii)    a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of title 36.

15 U.S.C. § 1116(d).

There are no material facts in dispute as to the nature of the designs at issue, or that the Content Owners' designs qualify as "counterfeit".  (They do not.)

BTR cannot prove its counterfeiting claim because the Content Owners' designs are neither identical to, nor substantially indistinguishable from, the BTR Marks.  Counterfeiting occurs when the merchandise "is made to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise." *See, e.g.*, 4 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 7:24 (4th ed.).  The meaning of "substantially indistinguishable" under the Lanham Act requires a closer degree of similarity than is required for traditional trademark infringement.  *See GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp.2d 457, 471-72 (S.D.N.Y. 2011) (finding on summary judgment that the mark "Charlotte Solnicki" is simply not identical with or substantially indistinguishable from "Charlotte" and therefore dismissing counterfeiting claim.)  Further, to be a counterfeit mark, the mark must be "spurious", which means "deceptively

14

suggesting an erroneous origin" or "fake". *See Id*. at 472. "Counterfeiting is the act of producing of selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." *Schneider Saddlery Co. v. Best Shot Pet Prods. Intern., LLC*, 2009 WL 964072, *4 (N.D. Ohio 2009), cited and relied upon in *Specht v. Google, Inc.*, 660 F. Supp.2d 858, 865 (N.D. Ill. 2009). To establish counterfeiting of a word mark, it cannot be enough that one word used in the defendant's mark is the same, with no reference to font, color, typeface, or context. *GMA Associates*, 765 F. Supp.2d at 472. Likewise, "[t]he Second Circuit has stated that an allegedly counterfeit mark must be compared with the registered mark as it appears on actual merchandise to an average purchaser." *Colgate-Palmolive*, 486 F. Supp.2d 286 at 289 (citing *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 533 (2nd Cir. 1983).

Plaintiff cannot meet the rigorous requirements of a counterfeiting claim, and there are no material facts in dispute on this point. Here, the Content Owners' designs do not even come to close to replicating the design elements of the BTR Marks. In fact, the Content Owners' designs demonstrably differ in all respects from the BTR Marks and no average customer would reasonably believe they are purchasing a product meant to be designated by the BTR Marks.

Similarly in *Colgate-Palmolive*, a court in this District held that the defendant's use of a toothpaste box was not substantially indistinguishable from the plaintiff's toothpaste box. 486 F. Supp.2d at 291. In that case, the court determined that the following packaging was not identical nor were they substantially indistinguishable:

 

*Id*.

In doing so the court noted not only the difference in spelling, but also the large graphical elements that were different, including the globe and yellow stripe on the Colddate box as well as the swirl and the ADA symbol on the Colgate box. *Id.* at 290-91.

15

Even more so than the packaging noted in the *Colgate-Palmolive* case, the Content Users' designs are clearly distinguishable from BTR's Marks as used on the goods for which BTR is claiming trademark use.  First, CafePress has never offered for sale electric guitars or any customization of electric guitars such as those offered by BTR.  As a result, there is no possibility that CafePress or its Content Owners have offered counterfeit goods.  More importantly, CafePress' Users' designs with "born to rock" and other phrases do not imitate Plaintiff's 978 Mark for apparel in any manner.  Plaintiff uses the BTR Mark in connection with a very specific logo shown below on guitars and allegedly on t-shirts as a merely ornamental design.  (Fact 14).



BTR does not use the word mark "born to rock" alone on any hang tags or labels attached to the clothing they allegedly sell.  (Fact 15).

The Content Users do not use the logo or even the words "born to rock" in a manner so similar to BTR's use that the average consumer would believe that they are buying a genuine BTR item.  Below again are the Content Users' images which clearly demonstrate that there is no likelihood that these images would be thought to belong to BTR or otherwise be confused with the BTR Marks or the goods allegedly sold by BTR:

| | | | |
|---|---|---|---|
|  |  |  | Born to be a rock star |





(Fact 12).

These Content Users' products and designs are plainly distinguishable from BTR's products and alleged trademarks.  They represent different fonts, designs, colors and additional/different wording than BTR's standard use of the BTR Marks – the Unregistered BTR Logo.  *See, e.g., Johnson v. Connolly*, 2007 WL 1151004, *2 (N.D.Cal. 2007) (finding defendant's mark, "fuzzy duds" was not "substantially indistinguishable" from plaintiff's mark, "cowboy's fuzzy duds," because of the difference in font and the omission of the word "cowboy's").

It is clear that none of the Content Owners' designs challenged by BTR were intended to reference the BTR Marks – indeed – the designs are markedly different than the Unregistered BTR Logo.  And no reasonable customer would believe the Content Users were attempting to "pass off" of the goods as genuine products or licensed products of Plaintiff.  In short, none of the designs copy the actual appearance of BTR's goods or the BTR Marks as used on those

18

goods.

**D.     BTR's Claims Should be Dismissed With Prejudice Because CafePress'
Search Function  and the Content Owners' Designs Constitute Permissible
Fair Use**

Even if there were a possibility that the Content Users were trying to pass off their

designs as BTR products (which they are not) or if CafePress and the Content Users were using

the challenged phrases as trademarks (they are not), the Content Users' designs and CafePress'

actions constitute protectable fair use under 15 U.S.C. § 1115(b)(4) and the common law.  Fair

use is an absolute defense to BTR's infringement and counterfeiting claims.  *See ETW Corp. v.

Jireh Publ., Inc.*, 332 F.3d 915, 923 n. 7 (6th Cir. 2003); *Bhiari v. Gross*, 119 F. Supp.2d 309,

321 (S.D.N.Y. 2000); *Leathersmith of London, Ltd. vs. Alleyn*, 695 F.2d 27, 31 (1st Cir. 1982).

BTR does not have the right to preclude fair, descriptive and non-trademark use of the phrase

"born to rock" or anything allegedly similar thereto.  The fair use doctrine provides that "[t]he

original, descriptive primary meaning [of a word or term] is always available for use by others to

describe their goods, in the interest of free competition."  *Hensley Mfg. v. Propride,

Incorporated,*, 579 F.3d 603, 612 (6th Cir. 2009) (internal citations omitted); *Tyco Healthcare

Croup, LP v. Kimberly-Clark Corp.*, 463 F. Supp.2d 127, 136-37 (D. Mass. 2006).

The Supreme Court has held that a defendant has <u>no independent burden to negate</u> the

likelihood of any confusion in raising the affirmative defense that a term is used descriptively,

not as a mark, fairly, and in good faith.  *See KP Permanent Make-Up, Inc.*, 543 U.S. at 112-13.

In doing so, the court noted that the Lanham Act was not meant to deprive commercial speakers

of the ordinary utility of descriptive words.  *Id.*  The Supreme Court further noted that "if any

confusion results, that is a risk the plaintiff accepted when it decided to identify its product with

a mark that uses a well known descriptive phrase."  *Id.* (internal citations omitted).[4]  To prove

---

[4]     CafePress has collected a substantial amount of evidence of third party use of the phrase
"born to rock" demonstrating that it is a well known common phrase and that the scope of BTR's
trademark rights are minimal because it has not sufficiently policed the BTR Marks and because
Plaintiff chose a colloquial descriptive phrase as its trademark.  (Fact 17).

"fair use" with respect to the search functions on the CafePress websites, CafePress must show only that:  (1) its use of "born to rock" and variations thereof is other than as a trademark; (2) the phrases are being used fairly and in good faith; and (3) the phrases were used only to describe its services.  *See KP Permanent Make-Up, Inc.*, 543 U.S. at 118.

CafePress can establish as a matter of law that the Content Users' use of the phrase "born to rock" is a fair use, thereby providing CafePress with an absolute defense to BTR's claims, or at least its counterfeiting claim.

**1.    CafePress' Search Function Fairly Uses the Phrases "Born to Rock" "Born to be a Rock Star" "Born to Rock, Ready to Roll" and Variations**

The appearance of these phrases on the CafePress website constitutes fair use.  First, with respect to the search functionality and indexing of products on its site, CafePress does not "use" the terms in a trademark manner as described above.  Instead, the appearance of these terms of the URL, the top of the search results, and other various fields is merely the result of users' search queries.  (Fact 18).  For the second and third elements, the use of the phrases is fairly and good faith – indeed, the Users type in the phrase they wanted searched on the CafePress website. CafePress does not control or dictate those search queries and therefore, the use of those search queries by Users is by definition fairly and in good faith.  Simply put, the use of the phrases on the website reflect and describe the term searched by the querying user.  CafePress has also met the three prongs of the fair use defense; the appearance of these phrases on the Website is for the good faith purpose of describing and reflecting the user's search query.   Consequently, CafePress' fair use defense bars BTR's claims.

**2.    The Content Owners Fairly Use "Born to Rock," "Born to be a Rock Star," "Born to Rock, Ready to Roll," and Variations Thereof**

BTR's claim that the Content Owners' use of the phrases ""born to rock", "born to rock, ready to roll", "born to be a rock star" and variations infringe its BORN TO ROCK mark is barred because the Content Owners are making fair descriptive use of the phrases "born to rock"

20

and other phrases that may contain those words.  As stated above, the Content Owners do not

"use" the terms in a trademark manner.  Instead, the use of these phrases in the Content Owners'

designs is purely ornamental.  The Content Owners use the phrases "born to rock," "born to be

rock star", "born to rock forced to work", "born to rock, ready to roll", "born to ride, born to

rock" and variations on their products and as keywords, not to serve as source identifiers or

brands, but because they most aptly describe a feeling inherently associated with the term.  *See,*

*e.g., Packman v. Chicago Tribune Co.* 267 F.3d 628, 639 (7th Cir. 2001); *Bell v. Harley*

*Davidson Motor, Co*., 539 F. Supp.2d 1249, 1258 (S.D.Cal. 2008) ("[C]ourts have applied the

fair use doctrine in situations where the defendant's use of the trademarked phrase describes a

feeling inherently associated with the phrase.").  Further, the terms are used in a good faith only

to describe a state of being, not to trade upon BTR's BORN TO ROCK alleged trademarks, and

are descriptive of the subject depicted on the apparel, that is, subjects related to rock and roll

music and the feelings such music engenders.  Thus, the Content Owners' designs constitute fair,

descriptive uses that are permissible under the law.

By way of example, the Content Owner design stating "born to rock forced to work"

(shown below) alludes to a desire to be able to "rock out" or play rock and roll music, rather than

work.



The Content Owners took no more than the patently descriptive phrase "born to rock" and

included other descriptive words to create unique designs and indicate his/her state of mind and

desire; there are no other elements (*i.e.*, a particular font or design) serving to indicate source.

The design includes the term "born to rock" in an ornamental and descriptive fashion (in fact, as

part of a sentence), not as a source identifier.  There is on the face of the design no element that

implies sources related to Plaintiff's BTR Marks.

In sum, BTR is attempting to monopolize use of the phrase "born to rock" and variations thereof over which they have no registration, such as "born to rock, ready to roll", "born to be a rock star" and variations thereof.  If successful, BTR would be allowed a monopoly on use of the colloquial phrase "born to rock" and those variations used by the Content Owners, which would essentially take a common term with a long history of use by third parties in both trademark and copyright contexts out of the public's lexicon.  That is not the intent of trademark law.  *KP Permanent Make-Up, Inc.*, 543 U.S. at 122 ("The common law's tolerance of a certain degree of confusion on the part of consumers followed from the very fact that in cases like this one an originally descriptive term was selected to be used as a mark, not to mention the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first.").

## IV.   CONCLUSION

For the above-stated reasons, there are no material facts in dispute and the Court can decide BTR's claims on summary judgment.  As a matter of law, CafePress and its Content Owners do not use the phrase "born to rock" and variations as a trademark, and the Content Owners' designs containing such phrases are not identical to, or substantially indistinguishable from, the BTR Marks.  Even if Plaintiff could overcome these two hurdles, its claims are barred by the fair use doctrine.  Accordingly, CafePress respectfully requests that the Court grant CafePress' motion for summary judgment on all of Plaintiff's claims, or at a minimum, grant summary adjudication on BTR's counterfeiting claim (Count II).

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

Dated:  November 30, 2011           By:  /s/ Jill M. Pietrini
                                         Jill M. Pietrini
                                         *Attorneys for Defendant*
                                         CAFEPRESS INC.

301077989.1

22