UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BORN TO ROCK DESIGN INCORPORATED,

                            Plaintiff,                    10 Civ. 8588 (CM)

    -against-

CAFEPRESS.COM, INC.,

                        Defendants.
------------------------------------------------------------------x

USDS SDN
DOCUMENT
ELECTRONICALLY FILED
DOC #:
9/7/12

## DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

### I. INTRODUCTION

The questions presented by Defendant's summary judgment motion are (1) whether Defendant infringes Plaintiff's BORN TO ROCK trademarks when it prints designs that incorporate the phrase "Born to Rock" on T-shirts and other merchandise at the request of its customers, and (2) whether Defendant is entitled to the defense of trademark "fair use."

For the reasons discussed below, the motion is denied.

### II. BACKGROUND

A. The parties[1]

Defendant Cafepress Inc., formerly known as CafePress.com, Inc., ("CafePress") operates a virtual online marketplace that allows its users to set up virtual "shops." CafePress users upload graphic designs to the CafePress.com website; by doing so, the users grant CafePress a license to "design, produce, market and sell" products bearing the users' designs.

---

[1] The following facts are undisputed, except where noted. The Court does not acknowledge purported "disputes" that amount to no more than legal argument.

1

Once the design is uploaded, the website causes it to appear on images of merchandise, such as (otherwise blank) T-shirts, coffee mugs, or key chains. Visitors to the CafePress.com website can browse designs, and if they find a design they like, they can select the kind of merchandise they would like printed with the design. Once a visitor places an order, CafePress prints the design on the selected merchandise and ships it to the customer. CafePress collects the payment, a portion of which is remitted to the CafePress.com user who created and uploaded the design. (See generally Defendant's Local Rule 56.1 Statement ("Def.'s 56.1") ¶¶ 1-3; Plaintiff's Local Rule 56.1 Statement ("Pl.'s 56.1") ¶ 1, Ex. 22; see also Pl.'s 56.1 ¶ 63.) The parties sometimes refer to CafePress' business as a "print-on-demand service."

Plaintiff Born to Rock Design Incorporated ("BTR") owns trademarks that it says CafePress infringes through its print-on-demand service. In particular, BTR obtained a trademark for the words BORN TO ROCK, Reg. No. 1,846,642 in Class 15 for electric guitars, in 1994. (Def.'s 56.1 ¶ 13; Pl.'s 56.1 ¶¶ 13, 28.) BTR's founder and current owner (who is also its attorney in this action) explains that he patented a new kind of neck for electric guitars, and selected the BORN TO ROCK mark in order to market his design. (Pl.'s 56.1 ¶¶ 24-28.) He also affirms that "the BORN TO ROCK guitar brand has attracted valuable goodwill," and supports that statement with exhibits that show use of the BORN TO ROCK brand name in numerous guitar publications. (Id. ¶¶ 37-39; Ex. 3.)

B. The dispute

BTR alleges that CafePress infringes its trademarks by selling merchandise bearing designs uploaded to the CafePress.com website that incorporate BTR's marks.

Since at least 2003, CafePress.com users have uploaded designs to the website that use the phrase "Born to Rock," either alone or in conjunction with other words or images. (Def.'s 56.1 ¶ 4.)[2] The following designs are some (but not all) of those that BTR alleges infringe its mark:

[Grid of infringing designs]

---

[2] In any case where there is a dispute as to whether the words 'born to rock' are being used as a trademark or as a non-source-identifying phrase, I represent the words as follows: "Born to Rock." This graphical choice does not reflect a legal conclusion.



(Def.'s 56.1 ¶ 12.) BTR points out that it also objected to other designs, one of which simply uses the words "Born to Rock" in an unadorned block font on an otherwise blank T-shirt. (See Pl.'s 56.1 ¶ 11.)

BTR, meanwhile, uses its BORN TO ROCK trademark in conjunction with the following unregistered logo:

4

(Def.'s 56.1 ¶ 14; Pietrini Decl. Ex. J.) This logo appears in exhibits showing BTR's website, as well as T-shirts and guitar picks BTR sells on its website. BTR points out that it also uses the words "Born to Rock" in the absence of its logo, such as on invoices it sends to customers. (See Pl.'s 56.1 ¶ 14, Exs. 9, 27.)

Finally, in an attorney's affidavit, made on "personal knowledge," CafePress asserts that it "has collected and produced a substantial amount of evidence of third party use of the phrase 'born to rock' on apparel and for music related goods and services." (Pietrini Decl. ¶ 11.) None of that evidence is included in the record on this motion.

C. Litigation history

On May 19, 2009, BTR sent a letter to CafePress asking it to remove user designs that contain the words "Born to Rock" from the CafePress.com website, citing its Class 15 trademark registration of the mark for use in conjunction with the sale of electric guitars. (Id. ¶ 5; Pl.'s 56.1 ¶ 5.) On May 26, 2009, CafePress responded by asking BTR to specify which designs BTR felt infringed its mark; on June 23, BTR responded with links to several designs it found objectionable. (Def.'s 56.1 ¶¶ 6-7; Pl.'s 56.1 ¶¶ 6-7.)

On June 25, 2009, CafePress formally responded to BTR's cease and desist letter, and informed BTR that it would not remove the designs from its website, relying on, among other things, the doctrine of fair use. The parties exchanged additional emails until September 8, 2009, when CafePress informed BTR that it would not change its position. (Def.'s 56.1 ¶¶ 8-9; Pl.'s 56.1 ¶¶ 8-9.)

The parties did not communicate for over a year. Then, on September 13, 2010, BTR wrote CafePress to demand once again that CafePress remove designs from its website that BTR

believed infringed its trademarks. This time, BTR relied on a second trademark, Reg. No. 3,843,978, in Class 25 for "T-shirts," which the U.S. Patent & Trademark Office ("PTO") issued to BTR on September 7, 2010. (Def.'s 56.1 ¶¶ 10, 13; Pl.'s 56.1 ¶¶ 10, 13.) On September 17, 2010, CafePress informed BTR that it had removed some, but not all, of the designs to which BTR had previously objected, and would not remove the others for the reasons discussed in its earlier correspondence. (Def.'s 56.1 ¶ 11; Pl.'s 56.1 ¶ 11.)

Rather than debate the issue further, BTR filed the complaint in the instant action on November 17, 2010. (Def.'s 56.1 ¶ 11; Pl.'s 56.1 ¶ 11.) BTR asserts claims for trademark infringement and false designation of origin (ECF No. 1 (Complaint), Counts I and III), and trademark counterfeiting (Id., Count II).

Following discovery, CafePress filed the pending motion for summary judgment.

### III. DISCUSSION

A. Summary judgment standard

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Whether any disputed issue of fact exists is for the Court to determine. Balderman v. U.S. Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986).

Once the motion for summary judgment is properly made, the burden shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The nonmovant "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998), but must support the existence of an alleged dispute with specific citation to the record materials. Fed. R. Civ. P. 56(c).

While the Court must view the record "in the light most favorable to the non-moving party," Leberman v. John Blair & Co., 880 F.2d 1555, 1559 (2d Cir. 1989) (citations omitted), and "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," Heyman v. Commerce and Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975) (citations omitted), the non-moving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec., 475 U.S. at 586 (citations omitted). Not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

B. Trademark infringement (Counts I and III)

In Counts I and III of the Complaint, BTR asserts claims for trademark infringement and false designation of origin under 15 U.S.C. §§ 1114 and 1125. The elements of BTR's *prima facie* case are the same under each provision. GMA Accessories, Inc. v. Croscill, Inc., 2008 WL 591803, at *3 n.2 (S.D.N.Y. Mar. 3, 2008) (citing cases).

### 1. *BTR's prima facie case*

CafePress first argues that it is entitled to summary judgment because BTR has failed to make out its *prima facie* case for trademark infringement. CafePress is incorrect.

To prevail on a trademark infringement claim, BTR must establish the following: (1) that it has a valid mark that is entitled to protection under the Lanham Act; and that (2) CafePress used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without BTR's consent. 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406-407 (2d Cir. 2005) (citing 15 U.S.C. § 1114(1)(a)) (other citations omitted).

In addition to these elements, BTR must show that CafePress' use of the mark "is likely to cause confusion . . . as to the affiliation, connection, or association of [CafePress] with [BTR], or as to the origin, sponsorship, or approval of [CafePress'] goods, services, or commercial activities by [BTR]." Id. (quoting 15 U.S.C. § 1125(a)(1)(A)); see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004); Gruner + Jahr v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993); Bihari v. Gross, 119 F. Supp. 2d 309, 316-17 (S.D.N.Y. 2000). Likelihood of confusion exists where "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark," or "are likely to believe that the mark's owner sponsored, endorsed, or otherwise approved of the defendant's use of the mark." S&L Vitamins, Inc. v. Australian Gold, Inc., 521 F. Supp. 2d 188, 205 (E.D.N.Y. 2007) (citing Playtex Prods., Inc. v. Georgia–Pacific Corp., 390 F.3d 158, 161 (2d Cir. 2004)) (other citations omitted).

CafePress concedes for the purpose of its motion that a reasonable jury could find in BTR's favor on every element of its *prima facie* case, except one. Of particular importance, CafePress assumes that a jury could find that BTR has valid trademarks that are entitled to

protection (CafePress Br. at 10 ("CafePress is not contesting validity in this motion")); and CafePress declines to argue that BTR cannot show a likelihood of confusion.[3]

CafePress argues that, nevertheless, it is entitled to summary judgment because BTR has not presented evidence from which a jury could conclude that CafePress "used" BTR's mark "in commerce." CafePress argues that it does not use the words "Born to Rock" in commerce when it displays the words on its website, for instance in connection with its search function. When a visitor to the website types "Born to Rock" into CafePress' search function, a page will appear, displaying the phrase in connection with identifying designs and merchandise. The page may show pictures of designs that incorporate "Born to Rock," and links that read "Born to Rock gifts" or "Born to Rock T-shirts." (See, e.g., Pl.'s 56.1, Exs. 13(a), 19(a).) CafePress argues that under recent caselaw addressing the issue of "use in commerce," CafePress' presentation of the words "Born to Rock" in these circumstances does not meet the threshold use in commerce requirement. See 1-800 Contacts, 414 F.3d at 407; Rescuecom Corp. v. Google Inc., 562 F.3d 123 (2d Cir. 2009).

CafePress is being facetious: it is undisputed that it imprints the designs on merchandise and ships that merchandise to customers. (See Def.'s 56.1 ¶¶ 1, 4; Pl.'s 56.1 ¶ 43; Defendant's Counterstatement ¶ 43.) That activity constitutes "use in commerce."

The Lanham Act defines "use in commerce," in relevant part, as follows:

For purposes of this Chapter, a mark shall be deemed to be in use in commerce

(1) on goods when –

---

[3] Despite conceding trademark validity, CafePress relies on several cases that stand for the proposition that descriptive marks that lack secondary meaning are not entitled to trademark protection. See, e.g., Grupke v. Linda Lori Sportswear, Inc., 921 F. Supp. 987, 995 (E.D.N.Y. 1996); Damn I'm Good, Inc. v. Sakowitz, Inc., 514 F.Supp. 1357, 1360-61 (S.D.N.Y. 1981). The Court will not fashion these citations into an invalidity argument that CafePress does not deem worth presenting on this motion. It is not the Court's role to second-guess CafePress' litigation strategy.

> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce, and
>
> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . .

15 U.S.C. § 1127 (quoted in 1-800 Contacts, 414 F.3d at 407).

Under the foregoing definition, "use in commerce . . . on goods" is readily apparent in CafePress' print-on-demand business. CafePress "uses" the words "Born to Rock" "in commerce" when it "place[s]" the words "on the goods," such as T-shirts, that CafePress imprints with its users' designs. 15 U.S.C. § 1127. "The goods are sold and transported in commerce" whenever the imprinted merchandise is sold and shipped to CafePress' online customers. As noted, it is undisputed on this motion that CafePress sells merchandise bearing the phrase "Born to Rock." (See Def.'s 56.1 ¶¶ 1, 4; Pl.'s 56.1 ¶ 43; Defendant's Counterstatement ¶ 43.)

Thus, a jury could find this element of BTR's *prima facie* case satisfied regardless of whether CafePress also "used" the BORN TO ROCK mark when it displayed that phrase elsewhere on its website (or in its source code, or in its "URL" or "metatags") in response to search results within its website. The sort of "use" discussed in the search provider context is simply irrelevant in cases, like this one, where the alleged infringer physically places the mark on goods that it sells to its customers.

This evidence of "use in commerce," in combination with the concessions identified above, makes out BTR's *prima facie* case of trademark infringement. Thus, CafePress' motion for summary judgment on the infringement claims must be denied unless it has established its fair use affirmative defense as a matter of law.

CafePress makes several arguments that confuse or conflate the concept of "non-trademark use" (which is part of the affirmative defense of fair use) with the element of "use in commerce" (which, as discussed, is part of the prima facie case). See 1-800 Contacts, 414 F.3d at 412. But "use in commerce" is not the same thing as "trademark use," as those terms are used in the statute. "Use in commerce" is a defined element of section 1114 and 1125 claims. See 15 U.S.C. § 1127 (defining "use in commerce"). It is only after a "use in commerce" has been established – along with the remaining elements of an plaintiff's *prima facie* infringement case – that one can logically reach the affirmative defense of fair use found in section 1115(b)(4). See infra. There, the statute refers to "use" of a mark "other than as a trademark," and it is from this language that the fair use concept of "non-trademark use" has developed. It is thus possible to have "use in commerce" that is not a "trademark use" for purposes of the fair use defense. When such cases arise, the defendant's "non-trademark use" is an element of the fair use defense – not a deficiency in the plaintiff's *prima facie* case.

Since a jury could find a "use in commerce" based on CafePress' print-on-demand business, its arguments regarding "trademark use" are appropriately addressed to its fair use defense, to which I now turn.

2. *Fair use*

"Fair use" is an affirmative defense to a claim of trademark infringement. See generally KP Permanent, 543 U.S. at 111. "A junior user is always entitled to use a descriptive term in good faith in its primary, descriptive sense other than as a trademark." Cairns v. Franklin Mint Co., 292 F.3d 1139, 1150–51 (9th Cir. 2002) (quoting 2 *McCarthy on Trademark and Unfair Competition* § 11.45 (4th ed. 2001)). As the Seventh Circuit Court of Appeals has put it, "This

11

defense 'is based on the principle that no one should be able to appropriate descriptive language through trademark registration.'" Packman, 267 F.3d at 639 (internal citation omitted).

The Lanham Act fair use defense is codified at 15 U.S.C. § 1115(b)(4), which applies when the alleged infringer establishes that "the use of the name, term, or device charged to be an infringement is a use, *otherwise than as a mark* . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party . . . ." 15 U.S.C. § 1115(b)(4) (emphasis added).[4]

"In other words, 'fair use permits others to use a protected mark to describe aspects of their own goods.'" Bihari, 119 F. Supp. 2d at 322 (quoting Car Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 270 (2d Cir. 1995)). It is not necessary that the plaintiff's mark be classified as "descriptive" to benefit from the fair use defense. Bihari, 119 F. Supp. 2d at 322; see also Bell v. Harley Davidson Motor Co., 539 F. Supp. 2d 1249, 1260 n.15 (S.D. Cal. 2008). Rather, the central considerations are whether *the defendant* has used the phrase "(1) other than as a mark, (2) in a descriptive *sense*, and (3) in good faith." Kelly-Brown v. Winfrey, 2012 WL 701262, at *2 (quoting EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 64 (2d Cir. 2000)) (emphasis added); Bihari, 119 F. Supp. 2d at 322.

As the Supreme Court explained in KP Permanent, 543 U.S. at 111, because fair use is an affirmative defense, it can be established notwithstanding that some possibility of consumer confusion will arise from a defendant's good faith, descriptive use of a mark:

> Since the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely, it follows . . . that some possibility of consumer confusion must be compatible with fair use, and so it is. The common law's tolerance of a certain degree of confusion

---

[4] "While fair use is an express defense to claims under 15 U.S.C. § 1114, courts have extended it to claims under 15 U.S.C. § 1125 as well." Kelly-Brown v. Winfrey, 2012 WL 701262, at *2 n.2 (S.D.N.Y. Mar. 6, 2012) (internal citation and alteration omitted).

12

> on the part of consumers followed from the very fact that in cases like this one an originally descriptive term was selected to be used as a mark, not to mention the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first. The Lanham Act adopts a similar leniency, there being no indication that the statute was meant to deprive commercial speakers of the ordinary utility of descriptive words. "If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase."

Id. at 121-22 (internal citations omitted).

As noted, the first element of the fair use defense is that CafePress made only "non-trademark use" of the phrase "Born to Rock" on the T-shirts it printed and sent to its customers. A "trademark use" involves an indication of the source or origin of the goods. See Dessert Beauty, Inc. v. Fox, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008). Thus, "A 'non-trademark use of [a] phrase' is evident where 'the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks.'" Kelly-Brown, 2012 WL 701262, at *3 (quoting Cosmetically Sealed Indus., Inc. v. Chesebrough–Pond's USA Co., 125 F.3d 28, 30-31 (2d Cir. 1997)). The fact that a phrase is used in a descriptive sense also suggests a non-trademark use. Id.

In Kelly-Brown, 2012 WL 701262, at *1 – a case on which CafePress relies – the defendant only used plaintiff's mark in combination with other clear source identifiers for the defendant's product. There, plaintiff registered as a mark the phrase "Own Your Power." Later, Oprah Winfrey's "O" Magazine used the phrase to promote an event, and printed the phrase "Own Your Power" on the cover of the magazine. The District Court found that the plaintiff would not be able to overcome a fair use defense, as a matter of law, and dismissed the complaint. In doing so, he observed that the magazine cover and event promotions included other clear source identifiers, establishing non-trademark use of the "Own Your Power" phrase:

> Defendants argue that they used the Phrase in its descriptive sense and not to indicate the source or origin of the goods (the Magazine and the Event). The source of the Magazine was clearly identified by the prominent, and distinctive "O" trademark followed by "The Oprah Magazine." The fact that Oprah herself is pictured on the cover of the Magazine further identifies the source of the goods. The prominent display of Magazine's trademark "O" also identifies the Phrase as a headline that, along with the other text on the cover, describes the contents of the Magazine.
>
> The O Magazine was also identified as the source of the Event, and the Phrase served to describe the Event's theme. Promotional materials identified the Event as: "O, The Oprah Magazine's first-ever own your power event in celebration of the October issue cover story," which involved "a lively panel discussion about power featuring some notables from this issue's Power list." Since the promotional materials clearly identified The O Magazine as the source of the Event, the Defendants' use of the Phrase in relation to the Event was not a trademark use.

Id. at *3 (citing Packman v. Chicago Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001)) (internal alterations omitted); see also Arnold v. ABC, Inc., 2007 WL 210330, at *3 (S.D.N.Y. Jan. 29, 2007); B & L Sales Associates v. H. Daroff & Sons, Inc., 298 F.Supp. 908 (S.D.N.Y. 1969).

Here, the only record evidence that goes to the element of "non-trademark" use are pictures of the allegedly infringing designs. For some of these designs – for example, a T-shirt bearing the phrase "Born to Rock" and nothing else – there is no potential source identifier other than the words that constitute BTR's mark. Assuming – as CafePress does for purposes of its motion – that the BORN TO ROCK mark has acquired at least *some* secondary/source identifying meaning, a reasonable juror could conclude that the use of the phrase "Born to Rock" was intended to identify BTR as the source of such a T-shirt.

Of course, a juror might look at another of the T-shirts – for example, the one that depicts a rocking chair and says, "Born to Rock" – and conclude that the phrase is used only ornamentally, and not to identify the T-shirt's maker. Or there might be some other element of the T-shirt – a tag, for example – that identifies the source in the same way that "O" magazine

14

did in Kelly-Brown. Indeed, in some of the designs pictured in the record, a source other than BTR is clearly indicated – by the name of a website that appears on the uploaded design. But there are other designs – for example, designs that include guitars and the words "Born to Rock" – which do not contain any obvious indicium of a source other than BTR, and which (because of the their use of guitars) might logically be thought to emanate from BTR.

Here, CafePress' litigation strategy upends its cause. By failing to move for summary judgment on a design-by-design basis, CafePress essentially asks the Court to take judicial notice of that fact that every use BTR complains of is a non-trademark use as a matter of law. I cannot do that based on the evidence proffered in support of this motion. Viewing the evidence in the light most favorable to BTR, CafePress is not entitled to judgment as a matter of law on its affirmative defense.

The cases on which CafePress relies are like Kelly-Brown, the Oprah case: in each, the defendant's use of a descriptive phrase was accompanied by clear indicia of the source of the goods. See, e.g., Packman, 267 F.3d at 629; Bell, 539 F. Supp. 2d at 1259; cf. B & L, 298 F. Supp. at 910-11. None of the cases cited to me found, as a matter of law, that the use of some phrase is a non-trademark use for no other reason than that phrase has a commonly understood descriptive or ornamental connotation. None of the cases supports CafePress' position that it has satisfied the first element of its fair use defense, as a matter of law, for each and every allegedly infringing design.

The most closely analogous case cited to the Court is 3 Point Distribution LLC d/b/a Ezekiel v. CafePress.com, Inc., 2008 U.S. Dist. LEXIS 17128, at *1 (C.D. Cal. Feb. 25, 2008), which involves very similar claims brought against CafePress by the owner of a mark who objected to having it printed on goods through CafePress' service. Plaintiff there registered the

15

mark EZEKIEL for use on clothing. As here, CafePress printed user designs that included the word "Ezekiel" on T-shirts and other merchandise, and the plaintiff complained that doing so violated its trademark.

Plaintiff moved for a preliminary injunction prohibiting CafePress from distributing products bearing the EZEKIEL mark. In the course of granting that motion, the Central District of California concluded that the plaintiff was likely to succeed in defeating CafePress' fair use defense – effectively the same defense CafePress offers here. Id. at *21-24. Other than to point out differences in the procedural postures, CafePress has no answer to this case.

Because reasonable jurors could disagree on (at least) the first element of CafePress' fair use defense, its motion for summary judgment on BTR's infringement claims (ECF No. 1, Counts I and III) must be denied. There is therefore no need to examine the other elements of CafePress' fair use defense.

C. Trademark counterfeiting

CafePress also moves for summary judgment dismissing BTR's claim for trademark counterfeiting. However, because the case will proceed to trial in any event on the trademark infringement claims – and the same evidence will be presented for all claims – there is no need for the Court to pass on the viability of the counterfeiting claim at this point. CafePress will be free to renew its motion at the close of the evidence.

IV. CONCLUSION

The motion for summary judgment is DENIED. The Clerk is directed to terminate the motion at ECF No. 25 from the Court's list of pending matters.

The parties will proceed to trial. The final pre-trial conference will be held on September 17, 2012, at 10am in Courtroom 14C, 500 Pearl St., New York, NY. Trial will commence the following morning. The parties are advised to consult my Individual Rules in anticipation of the conference and the trial.

Dated: September 7, 2012

_____
U.S.D.J.

BY ECF TO ALL COUNSEL