UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――x

BORN TO ROCK DESIGN INCORPORATED,

    Plaintiff,

-against-

CAFEPRESS.COM, INC.,

    Defendant.

―――――――――――――――――――――――x

10 Civ. 8588 (CM)(JCF)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/3/12

## RULINGS ON IN LIMINE MOTIONS

McMahon, J.:

    The court, for its rulings on the motions in limine:

    1.    Café Press's motion in limine #1, to preclude plaintiffs from calling defendant's trial counsel, Jill M. Pietrini, Esq., as a witness (Docket #103) is GRANTED. Nor will any statements made by Ms. Pietrini in connection with cases involving other clients and other trademarks be admitted into evidence at this trial.

    2.    While we are at it, no lawyer for Born to Rock is going to testify, either, so Café Press's motion in limine #2 to preclude Robert M. Kunstadt from explaining matters of trademark law or practice before the PTO (Docket # 102) is GRANTED. I am the judge of the law in this case and the only person who will explain any issues of law to the trier of fact (which will be a jury) is I. Furthermore, because he has previously not been designated as an expert in this case, Mr. Kunstadt will not be allowed to testify about matters that ought to be the province of an expert. However, the fact that he is also the President of BTR means he may testify as a fact witness, on factual matters that do not require the testimony of an expert – and that includes the topic of damages to BTR. But Mr. Kunstadt cannot testify and serve as trial counsel in any capacity, so Mr. Kunstadt will not be allowed to make any statement to the jury or to examine any witness at the trial. It is not enough for him to say that he will not serve as "lead" counsel – he cannot serve as trial counsel, period. And this trial will not be adjourned to give new counsel time to get up to speed, so someone other than Mr. Kunstadt had better be prepared to try this case in two weeks.

    3.    Café Press's motion in limine #3, to exclude any reference to, evidence of, or allegations by BTR about matters involved in litigation in which Café Press has been involved (Docket #101) is GRANTED IN PART AND DENIED IN PART. I can fathom a scenario in

which evidence about other lawsuits might be relevant; indeed, if the cases against other parties involved the very trademarks at issue in this case, there might be issues of res judicata or collateral estoppel that would bind Café Press. However, as far as I know, BTR has not brought a motion in limine to establish facts that would permit this court to conclude that there are any former adjudication issues relating to the lawsuits that are the subject of Café Press's motion. If Café Press has been found, in another litigation, to have infringed some other trademark owner's marks in the same way that it is alleged to be infringing on BTR's marks, that evidence (assuming it were introduced in proper form, which would NOT be through the testimony of Mr. Kunstadt) would be relevant and admissible on the issue of willfulness. However, the fact that Café Press was sued by some other individual or company is *not* relevant evidence of bad faith or willfulness, and so cannot be introduced. Finally, the fact that the Ezekiel case was cited by this court as authority for denying Café Press' motion for summary judgment does not mean that we will be trying the Ezekiel case in this court. If judgment was granted against Café Press in Ezekiel, the jury could hear about that fact if some competent person had been designated to testify; Mr. Kunstadt is not such a person. But at present all I know about Ezekiel is that the court in California thought the plaintiff in that case was likely to succeed in defeating a defense of fair use. That preliminary finding, which has no former adjudication effect whatever, is of little help to BTR at this trial on the merits.

    4.    Café Press's motion in limine #4, to exclude evidence relating to unrelated designs appearing on defendant's web site (Docket #104), is GRANTED. This trial will be about whether BTR has a valid and protectable trademark (contrary to plaintiff's assertion, the fact that there is no counterclaim does not obviate the need for plaintiff to prove that it has a valid and protectable trademark, which is a precondition to a finding of trademark infringement), and, if so, whether Café Press infringed on that mark. In any event, the evidence in the witness statement that Café Press uses as the basis of its motion is incompetent evidence if it comes from Mr. Kunstadt; only owners of other trademarks could testify to the fact that their marks are being infringed by Café Press, and my review of the witness list does not reveal that BTR plans to call the owners of other marks. I agree that evidence of widespread infringement on BTR's part would be relevant to the issue of willfulness, but sadly, BTR will apparently not proffer *admissible* evidence of widespread infringement of the marks of other trademark owners – and the trier of fact cannot infer infringement simply from the fact that other trademarks appear on Café Press' web site.

    5.    Café Press' motion in limine #5, to exclude evidence "interpreting and deliberately taking out of context" certain Café Press documents (Docket # 100 ) is DENIED. If defendant believes that plaintiff is not offering all relevant portions of documents, and that certain portions of documents that make other statements complete need to be called to the attention of the trier of fact, it should introduce those portions – either by bringing them to the attention of the court during the final pre trial conference, where all evidentiary rulings on documentary evidence will be made, or by calling them to the attention of the trier of fact during the trial.

    6.    Café Press's motion in limine #6, to exclude evidence related to Café Press's SEC Filing – specifically, to Amendment No. 3 to form S-1 filed with the SEC on August 22, 2011

(Docket # 98) -- is GRANTED. At the time it went public, Café Press was required to make certain disclosures to the public in a registration statement. Among the disclosures it made was that, as a distributor of content obtained over the internet, it faces potential liability for copyright or trademark infringement. That is a true statement – if Café Press is not careful, it may be held liable for infringing on someone else's protectable intellectual property. However, that disclosure does not constitute an admission that Café Press has done anything, or intends to do anything, that would actually render it liable to anyone, and so it does not advance the ball one iota in this case. Café Press's disclosure neither proves that BTR has a valid or protectable trademark (nor tends to establish any fact that plaintiff needs to prove in order to prevail in this lawsuit). Furthermore, not only does the document have NO probative value, it will waste valuable trial time to have to explain it to the jury. Plaintiff's argument – that the SEC filing somehow proves that Café Press has a business plan of willfully infringing trademarks, then knuckling under to reasonably foreseeable infringement litigation – is hardly worth discussing. It betrays a woeful lack of familiarity with the requirements of SEC filings, in which companies routinely disclose known litigation risks without the slightest intention of admitting thereby that they are violating or intend to violate the law or anyone else's rights.

       7.    Café Press's motion in limine #7, to exclude "evidence related to PTO records of irrelevant and prejudicial trademarks" (Document #99), is really a subsidiary motion to the motion about Ms. Pietrini that is discussed at Paragraph 1 above. To the extent that this motion is not moot as a result of the decision on Motion #1, it is GRANTED. Indeed, plaintiff's response to this motion is to rely on its response to Motion #1, so plaintiff effectively admits that the result should be exactly the same. The trial of this action will focus on the validity of the mark "Born to Rock." The fact that Café Press (or any of Ms. Pietrini's clients) registered other marks that on their face appear to be as weak as defendant argues Born to Rock is of no moment – the registration of those marks makes "Born to Rock" neither stronger nor weaker, and as it is use of a particular mark (be it weak or strong) in commerce that makes a trademark protectable, focusing the jury's attention on other marks that could be classified as weak or descriptive will require mini-trials about the use of each of those marks by its owner – a frolic and detour in which this court is not inclined to engage. Plaintiff has the burden of demonstrating that Born to Rock is indentified with plaintiff and plaintiff's products by the consuming public or some relevant subset thereof. It should focus on discharging that burden.

       8.    Café Press' motion in limine # 8, to exclude evidence related to unrelated third party t-shirts without a label or a hangtag (Docket # 97), is DENIED without leave to renew at an appropriate time. BTR will not be allowed to have its President (assuming he is not trial counsel) testify about PTO practice; and since BTR has not designated an expert witness it is not clear to me that anyone can give such testimony. Nor is it clear from the papers why it would be relevant.

       9.    Café Press' motion in limine #9 to exclude evidence of defendant's insurance (Docket #96) is GRANTED. If Café Press violated a rule relating to discovery, the proper course of action was to make a motion pursuant to Rule 37 for sanctions. The time for any such motion has long since passed, and the court will not entertain such a motion now. Juries do not hear about discovery disputes during trials – at least, not in my courtroom.

10. Café Press' motion in limine #10, to exclude evidence related to the photograph and "certificate of recognition" (Docket #95), is deferred to the final pre trial conference, at which time plaintiff's trial counsel (whoever that may be) will have to explain why the photograph and certificate of recognition have anything to do with this case.

11. Café Press' motion in limine #11, to exclude information and documents not produced during discovery (Docket # 106 ), appears to be an unnecessary use of an in limine motion. At the final pre trial conference the court will examine every exhibit and either admit it or exclude it. The only exhibits that can be offered in evidence are the exhibits listed in the final pre trial order. If Café Press claims surprise as to any exhibit so listed, it can make its pitch at the final pre trial conference.

This constitutes the decision and order of the court. The Clerk is directed to remove the motions at Dockets 95 through 106, inclusive, from the list of open motions.

Dated: October 3, 2012

_____
U.S.D.J.

BY ECF TO ALL COUNSEL